JASON R. HULL [11202]
JHULL@MOHTRIAL.COM
CONNOR B. ARRINGTON [17560]
CARRINGTON@MOHTRIAL.COM
**MARSHALL OLSON & HULL**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655
FAX: 801.456.7656

ATTORNEYS FOR PLAINTIFF

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **HAWX SERVICES, LLC**, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**AXIS PEST HOLDNGS, LLC,** a Utah limited liability company, **AXIS PEST SOLUTIONS, LLC**, a Nevada limited liability company, **MICHAEL PETRI**, an individual, and **COLTON COTTRELL**, an individual,<br><br>Defendant. | **COMPLAINT**<br><br><br>Case No. 1:21-cv-00088-HCN<br><br>Judge Howard C. Nielsen, Jr. |

Plaintiff Hawx Services, LLC hereby complains of defendants Axis Pest Holdings, LLC, Axis Pest Solutions, LLC, Michael Petri and Colton Cottrell as follows:

1. Plaintiff Hawx Services, LLC ("Hawx") is a Utah limited liability company with a principal place of business in Weber County.

2. Defendant Axis Pest Holdings, LLC ("Axis Holdings") is a Utah limited liability company with its principal place of business in Utah County.

3. Defendant Axis Pest Solutions, LLC ("Axis Solutions", and with Axis Holdings, "Axis") is a Nevada limited liability company with its principal place of business in Utah County.

4. On information and belief, defendant Michael Petri ("Petri") is an individual who is a citizen of Nevada or California.

5. On information and belief, defendant Colton Cottrell ("Cottrell") is an individual who is a citizen of Utah.

## JURISDICTION AND VENUE

6. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

7. Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### *Hawx's Business*

8. Through years of considerable effort and expense, Hawx has grown into a successful pest control company and has acquired thousands of customers.

9. Hawx's business model involves selling its goods and services door-to-door through its salespersons.

10. Hawx expends substantial time, money, and resources in acquiring, maintaining, and retaining its customers.

11. Hawx also spends substantial time, money, and resources in acquiring, maintaining, and retaining its salespersons.

12. A customer who purchases services from Hawx enters into a contract pursuant to which the customer pays a fee for various pest control services offered by Hawx.  These

contracts automatically renew year-to-year for additional pest control services so long as the customer does not terminate the contract.

### *Petri's Contract with Hawx*

13. Prior to the 2020 summer selling season, Petri was a salesperson for Hawx and sold for Hawx in North Carolina.

14. As part of providing services to Hawx and to protect Hawx's valuable business interests, Petri executed a Direct Seller Confidentiality and Nonsolicitation Agreement (the "Petri Agreement") with Hawx on or about September 12, 2018.

15. The Petri Agreement provided certain covenants that survived the termination of Petri's relationship with Hawx.

16. First, for a period of three years after the time he stopped providing services to Hawx, Petri agreed to not "disparage Hawx."

17. Second, for a period of three years after the time he stopped providing services to Hawx, Petri agreed that he would not "recruit, solicit, induce, or influence (or seek to induce or influence) any person who is employed by, hired by, affiliated with, or acts as an independent contractor, direct seller, employee, technician, office staff or salesperson for, or who was employed by, hired by, affiliated with, or acted as an independent contractor, employee, technician, office staff, direct seller or salesperson during the Term, of Hawx to terminate or alter his relationship with Hawx."  For each breach of this term, Petri agreed to liquidated damages equal to $75,000.00.

18. Third, for a period of three years after the time he stopped providing services to Hawx, Petri agreed that he would not "directly or indirectly recruit, solicit, induce, or influence (or seek to induce or influence) any person who is a customer of Hawx or who was a customer of

Hawx during the Term to terminate its relationship with Hawx or to commence a relationship with a competitor of Hawx." For each breach of this provision, Petri agreed to liquidated damages equal to the "customer's quarterly service fee rate multiplied by twenty-four."

19. The Petri Agreement provides for attorney fees and costs to the prevailing party if an action is brought to enforce the terms of the Petri Agreement.

*Petri Breaches Agreement*

20. Petri stopped working for Hawx after the 2019 Summer sales season.

21. In the Summer of 2020, Petri went to work for Axis in North Carolina.

22. This was the same market in which Petri worked for Hawx in the Summer of 2019.

23. Petri acts in a managerial position for Axis and trains salespersons and others in deceptive practices against Hawx.

24. In working for Axis, Petri has solicited Hawx customers to leave Hawx and/or receive services from Axis, examples of which are set forth below.

25. Additionally, Petri has solicited Hawx's salespersons to work with him at Axis in breach of his agreement with Hawx. Specifically, Petri has solicited Matt Dennis and Gavin Janis to leave Hawx and work for Axis for the Summer of 2021.

26. On information and belief, Petri has solicited other of Hawx's salespersons and technicians to leave Hawx and work for Axis.

27. Additionally, as set forth below, Petri has improperly solicited Hawx's customers and made disparaging remarks regarding Hawx to those remarks.

### *Cottrell's Contract with Hawx*

28. Prior to the 2020 summer selling season, Cottrell was a salesperson for Hawx and sold for Hawx in North Carolina.

29. As part of providing services to Hawx and to protect Hawx's valuable business interests, Cottrell executed a Direct Seller Confidentiality and Nonsolicitation Agreement (the "Cottrell Agreement") with Hawx for the summer 2019 sales season.

30. The Cottrell Agreement provided certain covenants that survived the termination of Petri's relationship with Hawx.

31. First, for a period of three years after the time he stopped providing services to Hawx, Cottrell agreed to not "disparage Hawx."

32. Second, for a period of three years after the time he stopped providing services to Hawx, Cottrell agreed that he would not "recruit, solicit, induce, or influence (or seek to induce or influence) any person who is employed by, hired by, affiliated with, or acts as an independent contractor, direct seller, employee, technician, office staff or salesperson for, or who was employed by, hired by, affiliated with, or acted as an independent contractor, employee, technician, office staff, direct seller or salesperson during the Term, of Hawx to terminate or alter his relationship with Hawx." For each breach of this term, Petri agreed to liquidated damages equal to $75,000.00.

33. Third, for a period of three years after the time he stopped providing services to Hawx, Cottrell agreed that he would not "directly or indirectly recruit, solicit, induce, or influence (or seek to induce or influence) any person who is a customer of Hawx or who was a customer of Hawx during the Term to terminate its relationship with Hawx or to commence a relationship with a competitor of Hawx." For each breach of this provision, Petri agreed to

- 5 -

liquidated damages equal to the "customer's quarterly service fee rate multiplied by twenty-four."

34. The Cottrell Agreement provides for attorney fees and costs to the prevailing party if an action is brought to enforce the terms of the Agreement.

### *Cottrell Breaches Agreement*

35. Cottrell stopped working for Hawx after the 2019 Summer sales season.

36. In the Summer of 2020, Cottrell went to work for Axis in North Carolina.

37. This was the same market in which Cottrell worked for Hawx in the Summer of 2019.

38. On information and belief, in working for Axis, Cottrell has solicited Hawx customers to leave Hawx and/or receive services from Axis.

39. Additionally, Cottrell has solicited Hawx's salespersons to work with him at Axis in breach of his agreement with Hawx.  Specifically, Cottrell has solicited Thomas Finnegan, Ethan Bell, Kaimana Namahoe, Joe Peterson, Julio Bautista, and Cole Weaver to leave Hawx and work for Axis.

40. On information and belief, Cottrell has solicited other of Hawx's salespersons or technicians to leave Hawx and work for Axis.

### *Axis' Business*

41. Axis provides pest control services through door-to-door sales and is a direct competitor of Hawx for both customers and sales representatives.

42. On information and belief, Axis Holdings and Axis Solutions are alter egos of each other and operate together as one.

43. On information and belief, Axis Holdings and Axis Solutions are all owned, controlled and managed by the same individuals, such that the separate personalities of these entities no longer survive.

44. On information and belief, Axis Holdings and Axis Solutions are all run as one enterprise, with common directors, officers, employees, consultants, and contractors.

45. On information and belief, Axis Holdings and Axis Solutions are undercapitalized.

46. On information and belief, Axis Holdings and Axis Solutions do not observe required corporate formalities or keep proper corporate records.

47. On information and belief, Axis Holdings and Axis Solution do not pay distributions to their members.

48. On information and belief, the owners of Axis Holdings and Axis Solutions siphon corporate funds of Axis Holdings and Axis Solutions and use those funds to run both entities.

49. Axis, along with Petri, have engaged in a campaign to damage Hawx's reputation, goodwill and business relationships by, among other things, disseminating false, disparaging, and damaging information about Hawx and its sales representatives, by unfairly competing with Hawx through means of unlawful and deceitful practices, and by interfering with Hawx's contractual relationships with its customers.

50. On information and belief, Axis reached an agreement to train and instruct their sales representatives to engage in these unlawful and deceitful practices in order to harm Hawx and steal its customers.

51. This is reflected in these entities' sales representatives' coordinated effort to steal Hawx customers, their uniform reference to Axis, and their uniform approach to the unlawful and deceitful practices against Hawx customers.

52. With full knowledge of Hawx's agreements with its customers (Hawx's "Customer Contracts"), Axis, Petri, and their employees, contractors, assigns, agents, or alter egos, have engaged in a campaign to target, and improperly solicit existing Hawx's customers (hereafter, each a "Hawx Customer" and collectively, "Hawx Customers") by making misrepresentations to them.

53. Axis and Petri have made false statements and misrepresentations to Hawx Customers that have included at least the following:

(a) Hawx had filed for bankruptcy;

(b) Hawx had sold to Terminix International (a competitor of Hawx) or was otherwise selling its accounts;

(c) Axis is taking over Hawx's customers and/or service;

(d) Hawx was unable to pay its employees; and

(e) Hawx was closing down its business.

54. Each of these statements is false and/or misleading.

55. Defendants improperly solicited one or more Hawx Customers by making these and other similar misrepresentations to Hawx Customers and utilizing unfair and deceptive sales practices.

56. The individuals who actually made the false and misleading statement to Hawx's Customers were sales representative agents of Axis, including Petri.

57. The identities of such Hawx Customers and the alleged false and misleading statements made by defendants are set forth below. Hawx will disclose the identities of additional Hawx Customers and the alleged false and misleading statements made to these additional customers by defendants when such information is discovered or becomes reasonably available to Hawx.

### *Axis and Petri Trained Their Sales Representatives to Use False and Deceptive Sales*

58. At least some or all of the aforementioned examples of the deceptive, dishonest, tortious, untrue and illegal sales practices alleged herein were at the direction of the managers of Axis, including Petri and Cottrell.

59. Axis and Petri train their managers and other sales representatives to utilize false and deceptive sales practices in order to cause Hawx Customers to switch their pest control business to Axis under false pretenses.

60. Axis and Petri not only condone such sales practices, but they also actually encourage and train these reprehensible sales practices to their managers and other sales representatives.

61. Stealing Hawx Customers is a subject of bragging and competition among Axis' sales representatives.

62. Axis and Petri train and instruct their sales representatives in techniques to deceive, confuse and mislead Hawx Customers.

### *Specific Instances of Misrepresentations by Axis Through Petri and Others*

63. In addition to being a breach of his contract with Hawx and Petri have engaged in a campaign to damage Hawx's reputation, goodwill, and business relationships by, among other things, disseminating false, disparaging, and damaging information about Hawx and its sales

representatives, by unfairly competing with Hawx, and by interfering with Hawx's contractual relationships.

64. While making some or all of these representations, Petri wore a Hawx-branded hat or jacket to make themselves appear to be affiliated with Hawx.

65. In early to mid-April 2020, Petri approached Hawx customer Marijan Pavlovic in Charlotte, North Carolina wearing a Hawx branded hat and jacket. Petri stated that Hawx had gone out of business, was in bankruptcy, and that Axis was taking over the service. Demonstrating that he was targeting Hawx customers, Petri did not stop at the immediate next-door neighbor of Pavlovic but went down several houses before knocking again.

66. In April 2020, Petri knocked on the door of Micah Hood in Charlotte, North Carolina and offered pest control services through Axis. When Mr. Hood responded that he had service through Hawx, Petri stated that "Hawx Services was filing bankruptcy and closing down business."

67. In or about May or June 2020, Petri went to the house of Hawx customer Aaron Jones in Charlotte, North Carolina and stated that Hawx "had filed bankruptcy and sold to Terminix International" and that Axis would be taking over the service. Petri also stated that "Hawx was unable to pay their employees" and repeated that "Hawx did sell their company" and that Axis would "be taking over the accounts."

68. In or about early July 2020, an unidentified representative of Axis went to the house of Chad Daigle in Charlotte, North Carolina, stated that he was a 10 percent owner of Hawx, stated that Hawx was filing bankruptcy and Mr. Daigle's contract with Hawx "wouldn't be good soon."

69. In or about June 2020, Tyler Roskelley of Axis went to the house of Hawx customer Andre Bailey in Concord, North Carolina and stated that he previously worked for Hawx and that Hawx was going bankrupt. Based on these statements, the customer cancelled service with Hawx and went with Axis.

70. In or about Fall 2020, Tyler Roskelley of Axis went to the house of Hawx customer Niki Spainhour in Mecklenburg, North Carolina and stated that Hawx was having a lot of problems, was going out of business, and was selling out. The representative told Ms. Spainhour that her contract with Hawx was already complete and that she could cancel without penalty, which was not true. Ms. Spainhour signed a contract with Axis and cancelled with Hawx based on these misrepresentations.

71. Each of the statements made to these customers is false and misleading.

72. Hawx is informed and believed that Axis and Petri made similar misleading and false statements to other Hawx Customers. Hawx will disclose the identities of additional Hawx Customers and the alleged false and misleading statements made to these additional customers by Petri, Cottrell, or other Axis representatives when such information is discovered or becomes reasonably available to Hawx.

**FIRST CAUSE OF ACTION**
(Breach of Contract Against Petri)

73. Hawx hereby incorporates and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

74. The Petri Agreement is a valid and enforceable contract between Hawx and Petri.

75. Hawx has performed all of its material obligations under the Petri Agreement.

76. Petri has breached the Petri Agreement by, within three years of the time he last provided services to Hawx, soliciting Hawx's customers in North Carolina where he previously

worked for Hawx.

77. Petri has breached the Petri Agreement by, within three years of the time he last provided services to Hawx, soliciting Hawx's salespersons and other employees or agents to leave Hawx and provide services for Axis.

78. Petri has breached the Petri Agreement by, within three years of the time he last provided services to Hawx, disparaging Hawx by stating that Hawx has gone out of business, Hawx has gone bankrupt, Hawx has sold its accounts to Terminix, or Hawx does not pay its salespeople.

79. Hawx has been damaged by Petri's breaches of the Petri Agreement.

80. Hawx is entitled to a judgment in the greater amount of its actual damages, or the liquidated damages provided in the Petri Agreement.

81. Hawx is also entitled to its attorney fees and costs incurred in bringing this action to enforce the Petri Agreement.

**SECOND CAUSE OF ACTION**
(Breach of Contract Against Cottrell)

82. Hawx hereby incorporates and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

83. The Cottrell Agreement is a valid and enforceable contract between Hawx and Cottrell.

84. Hawx has performed all its material obligations under the Cottrell Agreement.

85. Cottrell has breached the Cottrell Agreement by, within three years of the time he last provided services to Hawx, soliciting Hawx's salespersons and other employees or agents to leave Hawx and provide services for Axis.

86. Cottrell has breached the Cottrell Agreement by, within three years of the time he

last provided services to Hawx, soliciting Hawx's customers in North Carolina where he previously worked for Hawx.

87. Hawx has been damaged by Cottrell's breaches of the Cottrell Agreement.

88. Hawx is entitled to a judgment in the greater amount of its actual damages, or the liquidated damages provided in the Cottrell Agreement.

89. Hawx is also entitled to its attorney fees and costs incurred in bringing this action to enforce the Cottrell Agreement.

## THIRD CAUSE OF ACTION
(Tortious Interference with Contractual Relations Against Petri and Axis)

90. Hawx hereby incorporates and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

91. A valid Customer Contract existed between Hawx and each of the Hawx Customers whom Axis acquired using false and misleading statements and representations as set forth above.

92. A valid Customer Contract existed between Hawx and each of the Hawx Customers whom Petri and Cottrell acquired for Axis using false and misleading statements and representations as set forth above.

93. Axis and Petri were aware of the Customer Contracts between Hawx and these customers.

94. Petri and Axis intentionally procured the termination of the Customer Contracts with Hawx.

95. Petri and Axis's interference was done through improper means, namely through deceptive, misleading statements as set forth above, which constitute trade slander/defamation and unfair competition under the Lanham Act and under Utah common law.

- 13 -

96. It is an established standard of trade or profession in the door-to-door sales industry not to make false or misleading statements to customers with all or nearly all companies including such a standard in their various rules of standards for their salespeople.

97. As a direct and proximate cause of Petri and Axis' interference, Hawx has been severely damaged and continues to be damaged.

98. The Court should award damages to Hawx in an amount to be proven at trial, including punitive damages.

**FOURTH CAUSE OF ACTION**
(Tortious Interference with Economic Relations Against Petri and Axis)

99. Hawx hereby incorporates and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

100. Hawx had existing and potential economic and business relations with customers and potential customers contacted by Axis and Petri.

101. Petri and Axis were aware of Hawx's potential economic and business relations.

102. Petri and/or Axis intentionally encouraged these customers and potential customers to terminate, not renew, or not commence Customer Contracts with Hawx.

103. Petri and Axis' interference was done through improper means, namely through deceptive, misleading statements as set forth above, which constitute trade slander/defamation and unfair competition under the Lanham Act and under Utah common law.

104. It is an established standard of trade or profession in the direct sales industry not to make false or misleading statements to customers with all or nearly all companies including such a standard in their various rules or standards their salespeople should follow.

105. As a direct and proximate cause of Petri and Axis' interference, Hawx has been severely damaged and continues to be damaged.

106. The Court should award Hawx damages in an amount to be proven at trial, including punitive damages.

**FIFTH CAUSE OF ACTION**
(Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), (B)
Against Petri and Axis)

107. Hawx hereby incorporates and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

108. Petri and Axis have made materially false or misleading representations of fact in connection with the commercial advertising or promotion of Axis' products or services.

109. Petri and Axis' false and misleading representations have been disseminated widely to a significant portion of Hawx's customer base.  Hawx expects to continue to discover additional customers that have been misled by Axis and Petri.

110. Such false and misleading representations are listed in the paragraphs above.

111. Petri and Axis made their false and misleading representations while engaged in interstate commerce.

112. The false and misleading representations (A) are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Hawx and Axis, or between the goods, services, or commercial activities of Hawx and Axis; or (B) misrepresent the nature, characteristics, qualities, or geographic origin of Hawx or Axis's goods, services, or commercial activities.

113. But for Petri and Axis' false and misleading representations, Hawx Customers would not have canceled their contracts with Hawx.

114. Petri and Axis' actions have injured Hawx and caused it to suffer damages to be determined at trial.

115. Pursuant to 15 U.S.C. § 1117(a), Hawx is entitled to a judgment against Petri awarding Hawx the following relief: (1) Petri's and Axis' profits derived from their wrongful conduct, (2) any damages Hawx sustained as a result of Petri's and Axis' actions, (3) Hawx's attorney fees and costs, and (4) an award of treble damages.

## SIXTH CAUSE OF ACTION
(Trade Slander/ Defamation Against Petri and Axis)

116. Hawx hereby incorporates and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

117. Petri and Axis have intentionally made false and misleading statements about Hawx and its products, as set forth above.

118. At the time Petri and Axis made these statements, Petri and Axis knew the statements were false.

119. The statements are defamatory *per se* in that the statements suggest conduct incompatible with the lawful exercise of business.

120. Petri and Axis' statements have damaged Hawx in that actual or potential customers of Hawx have ceased doing business with Hawx based on Petri's and Axis' statements.

121. The statements are injurious and damaging to Hawx in the industry and in the marketplace.

122. Hawx is entitled to damages, including punitive damages, injunctive relief, and attorney's fees and costs in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
(Unfair Trade Practices- N.C.G.S. § 75-1.1 *et seq*. against Petri and Axis)

123. Hawx hereby incorporates and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

124. Petri and Axis has engaged in unfair and deceptive acts by making the misrepresentations and/or misleading statements outlined above.

125. Axis and Petri's actions are unfair trade practices because they are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

126. Axis and Petri's actions are deceptive because they possess the tendency or capacity to mislead or creates the likelihood of deception.

127. Axis and Petri's actions were done as part of his attempt to sell on behalf of Axis and, as such, were done in or affecting commerce.

128. Hawx has been injured as a result of Petri and Axis' actions in that it has lost customers and has lost customer goodwill.

129. Hawx's injury has come as a proximate result of Petri and Axis' unfair and deceptive acts.

130. Pursuant to N.C.G.S. § 75-16, Hawx is entitled to judgment against Petri and Axis for the amount of its damages as proven at trial, which amount shall be trebled pursuant to statute.

131. Pursuant to N.C.G.S. § 75-16.1, Hawx is entitled to its attorney fees because Petri and Axis willfully engaged in the unfair and deceptive acts alleged.

## FIFTH CAUSE OF ACTION
(Unfair Competition- Utah Common Law against Petri and Axis)

132. Hawx hereby incorporates and re-alleges all previous paragraphs of this Complaint as though fully set forth herein.

133. Petri and Axis's deceptive sales tactics aimed at Hawx as alleged above were for the purpose of passing off, palming off, imitating, or substituting defendants' alarm systems and monitoring services for those of Alder.

134. Specifically, as described above, Axis and Petri used the following improper tactic in attempting to switch over Hawx's customers to Axis: (1) telling the customer that Axis is taking over or have bought out Hawx's customers and/or service; and (2) earing Hawx-branded clothing while soliciting Hawx customers for Axis.

135. Axis and Petri's deceptive sales tactics aimed at Hawx as alleged above caused confusion and induced Hawx Customers to enter contractual arrangements with Axis for pest control services, thinking that the alarm services were being provided by Hawx.

136. Petri and Axis' actions towards Hawx and its customers constitute unfair competition under Utah common law because those actions caused confusion or were likely to cause confusion in the minds of a substantial number of Hawx customers.

137. Hawx and Petri's actions have injured Hawx and caused it to suffer damage in an amount to be determined at trial.

138. Hawx is entitled to damages, including punitive damages, injunctive relief, and attorney's fees and costs in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, on each of its Causes of Action, Hawx prays for judgment in its favor and against Petri, Cottrell, and Axis as follows:

1. For damages in an amount to be proven at trial;

2. For statutory, treble and exemplary damages where allowed by law;

3. For liquidated damages as provided in the contracts between Hawx and Petri or Cottrell;

4. For prejudgment and post-judgment interest at the highest legal rate;

5. For an award of costs and attorney's fees; and

6. For such other relief as the Court deems just and reasonable under the circumstances.

DATED this 11th day of June, 2021.

**MARSHALL OLSON & HULL, P.C.**

By: /s/ Jason R. Hull
JASON R. HULL
CONNOR B. ARRINGTON

ATTORNEYS FOR HAWX SERVICES, LLC